Good morning, Your Honors. May it please the Court, Hillary Ann Hancock on behalf of Appellant and Cross Appellees, Continental Casualty Company and Transportation Insurance Company. Continental and Transportation's appeal of the District Court's denial of their claims for declaratory relief is grounded in the fundamental principles of equity. Appellants submit that it is fundamentally inequitable for a notice to receive full benefits under five separate insurance contracts and deny continental recovery of retrospective premiums specifically provided for in each and every one of those contracts. Civil Code Section 1589 unequivocally provides that, quote, voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it. The court in NorCal Mutual Insurance Company v. Nancy Newton said it best. No person can be permitted to adopt that part of an entire transaction which is beneficial to him or her and then reject its burdens. Yet that is exactly what happened here. Despite this well-established principle of law, in this case a notice received full benefits under each and every insurance contract in terms of both receiving a defense and settlement indemnity obligations, and yet by virtue of the District Court's rulings has escaped any and all obligations under those same contracts. The five insurance contracts at issue in this instance all provide for assessment of an increased premium when certain benefits are paid out under the policies. In this case, Continental and Transportation exhausted all six policies at issue by payment of over $7 million in contractual benefits comprised of both indemnity and defense obligations. Despite the receipt of full benefits under the insurance contracts, a notice was not required to fulfill any of its part of the bargain. Due to the Court's denial of Continental's motion to amend and its request for declaratory relief The motion to amend we review for abuse of discretion, correct? Yes. And this came some two years after the initial pleadings that were filed on your client's behalf. That's true, Your Honor. And the District Court simply, it seems to me, chose not to accept as sufficient your explanation of, well, we just kind of noticed it now. I mean, it was a little bit more elaborate than that, but basically, well, we just didn't think of it. Why is that an abuse of discretion? You were on the eve of trial, it was two years had gone by. Why is that an abuse of discretion? Well, it was not on the eve of trial. As the timeline will show, it was actually nearly two years before the trial commenced. And at the time, it was the first time that Well, it turned out to be. But you made the motion in October of 2007, and at that time, this trial was set for early March. That's right, Your Honor. So what the judge was looking at was, we've been doing this for two years, we're soon going to be at trial. Why is that an abuse of discretion? Well, Your Honor, primarily because the results in this case turned out to be so inequitable. The judge, I believe Wait, wait, wait. Are you saying that we decide whether a motion, the denial of a motion to amend the pleadings for being dilatory is something that we review only from the lens of whether the result turned out to be okay later? Or don't we look at what the judge had before him or her at the time of the decision? Well, what the judge had before her at the time was a prior motion for summary defendants that actually argued in favor of a breach of contract claim. The motion had been briefed. The discovery had been done. There was not a single allegation in that new cause of action that rested on any different facts than were before the judge at that very time. It would change the nature of the case that's going to be tried, bringing in different insurance policies? There were no new insurance policies at issue. New claims? No new claims. The only claim, the cause of action at issue, was a breach of contract claim. But that same issue had been raised as part of the declaratory relief action. Why breach of contract had never been pled before was because defendants did not believe it was a key cause of action. Had there been discovery on that particular issue? Absolutely. Under each and every policy of insurance, full discovery had been taken, 50 depositions had been taken, all of the issues that were at issue in the breach of contract claim had been explored. So these cutoff discovery and cutoff dispositive motion as part of the litigation you feel should be excused here because why? I'm sorry, Your Honor. I'm not clear what you're asking me. As I understand it, you correct me if I'm wrong, that there were cutoff dates the district court set in its efforts to control the litigation and move it along. That's correct. And this was past the cutoff dates for dispositive motions. This was past the cutoff dates for dispositive motions, but before the pretrial conference order. Before the final pretrial conference order. Correct. And there are a host of California cases cited in our papers that talk about the last final day that you should amend is at a pretrial conference, but there are also amendments. I know there's a lot of California cases, but would they apply in this case? I believe so, Your Honor. Your Honor, you're here because of diversity of citizenship, is that correct? That's correct. And under our law, procedural issues are guided by federal law, substantive by state law. Is it your position that this would be a state law issue or a federal law issue? This would be a federal law issue in terms of the guidelines set by the federal courts under the scheduling order. Okay. So the state, what the state does in issues like this won't make any difference. What's your best federal law case that it's an abuse of discretion to deny that motion? Your best one. Probably Bertero. The full site on that is Bertero v. National General Corporation. Actually, that's a Superior Court case. You know, I don't think I cited any district court cases, Your Honor, in terms of the procedural status. But you are certainly correct that the scheduling order would control here. And it is an abuse of discretion in cases such as this where it results in complete denial of relief to the applicant. Here, despite six existing insurance contracts with clear dictates of monies to be paid, premiums to be paid, if benefits are paid out, complete relief was denied based on the court's refusal to grant the motion to action. Counsel, this may be premature because of the cross-appeals status of this. But just speaking only for myself, my biggest concern is why the court did not grant damages to the plaintiffs on their breach of contract claims for wrongful settlement of a proper release and refusing to globally settle the cases. And I wonder if you would want to comment on why they are not entitled to consequential damages for that. Absolutely, Your Honor. Let me first address the issue of the release. No release was obtained on behalf of Enotis because Enotis was not a defendant in the SALA litigation. Enotis was not a defendant in most of the cases for which they were seeking settlement and funds from these insurers. And in the event that you're not a defendant and there is not a suit pending against you, the insuring clause of our policies do not require Continental Transportation to provide a defense or any indemnity obligations. In addition, the settlement of these actions, in terms of any actions and any damages arising out of that, are barred by the statute of limitations. That settlement occurred in June of 2001, and this action was not brought until 2004. Therefore, any bad faith allegations flowing from that settlement are barred by the statute of limitations. And Enotis Corporation, in fact, conceded that in response to Continental Transportation's very first motion for summary judgment in August 26th of, I believe it was, 07, they conceded in their papers that they were not even arguing for bad faith arising out of the settlement because it was, in fact, barred by the statute of limitations. Well, bad faith and breach of contract are not exactly the same thing. I guess my other question is whether we have sufficient findings by the district court at all on the issue that I was talking about that concerns me. That is, whether your client breached the contract in the particulars that are alleged. And I must say, I just find this case very confusing. And if I'm wrong about that, point me to where the district court made a determination up or down on whether your client breached the contract or not. In terms of breaching the contracts, I think the district court made clear in numerous rulings on various motions for summary judgment and motions in limine, that Continental and Transportation completely exhausted six policies in the payment of $7 million. Well, yes, but that doesn't completely answer the question of whether they should have obtained a particular kind of release upon paying out that money. That's a different question. And the format of the settlement in which they paid out that amount of money. With respect to those what I would call procedural breaches, I mean, it's not literally that, but just to distinguish it from the amount of the coverage, did the district court clearly make a determination up or down? It did, Your Honor. In several motions, not numerous instances, I can give you the dates of the various rulings which are in our paper. But the court revisited that issue on at least six occasions in the June 06 ruling on summary judgment, on the July 06 ruling, August 06, September 06, June 07, 1108, and 32609. Those are set forth in our papers. And the district court painstakingly issued findings, set forth the facts upon which it was relying in each and every instance, and found on more than one occasion that Continental and or its co-defendant Wausau did not breach the contracts at issue. And the only damages that would be available under a breach of contract cause of action are damages under the policy. And since the policy had already exhausted, there were no damages to be obtained. It is also inequitable, Your Honors, that the district court initially denied defendants' motion to amend, and then denied the cause of action for declaratory relief for the very reason that defendants had not fled breach of contract was the more traditional remedy, and it should have been asserted. Defendants tried to assert that, and defendants were denied the opportunity to assert that, and then to turn around at the end of the day and deny defendants' relief under a declaratory relief action because they had not fled breach of contract seems to me to be the height of inequity. In addition, our brief sets forth in excruciating detail the judge's opinion set forth at the time of the bench trial, wherein she specifically says that the defendant's assertion of declaratory relief is an appropriate remedy, and is owed under the policy. And she, in her ultimate ruling, said that it was not a prospective remedy, and therefore was not available. Of course it was a prospective remedy. What was at issue was what amounts were owed under the policy, something the defendant, the plaintiff, had never been able to agree on. The interest owed, which is set forth in the insurance contracts at 15 percent. None of those issues had been determined, and that is what these defendants were asking of the district court at the time of trial. So to have been denied any relief, both via a motion to amend nearly two years before trial, and then at the time of trial, seems to us to be the height of inequity. Do Your Honors have any further questions? I think not at the moment. Thank you. We'll see you again on rebuttal. Good morning. May it please the Court, my name is Joseph Fenton, and I represent Anotis Corporation. We are here this morning because my client is out in excess of 50 million cash dollars as a result of CNA's improper settlement practices in respect of product liability claims. During the relevant period of time, Anotis was a holding company. It employed no more than 17 people. It made nothing. It owned companies that made lots of things that potentially can hurt people. If you've ever been to McDonald's, everything you've eaten was cooked by products that Anotis subsidiaries made. It also owned a company called Consolidated, which made furnaces. It bought product liability insurance. It was the first named insured. It bought product liability insurance from CNA and Transportation. I will refer to them collectively as CNA. It bought product liability insurance, even though it made nothing, because like every holding company in these United States, it was concerned that it might someday be subject to some theory of what I will call generically parent liability. That's why it was the first named insured. Its premium was calculated based upon the revenues of its operating subsidiaries. It ended up being responsible for parent liability for product liability claims. And if you end up with parent liability, you don't have insurance for other things. If you end up with parent liability, you don't have insurance for the light bill, but you do have insurance for product liability claims. CNA had the opportunity to resolve all furnace claims against all of its insureds, including its first named insured, which, you know, in theory, the liability, excuse me, CNA's obligations to all of its insureds are the same, but I kind of think the first named insured is entitled to a little special treatment, but it didn't choose to do that. Is it relevant that Enotis, as the holding company, was not named in all of the lawsuits? Not at all, Your Honor. In this case, and the record couldn't be more clear about this, indeed, the excess carriers were also involved, and that's cited in our brief. I mean, this was a complicated situation, and we involved the carriers from the outset, because when this, quote, parent liability claim was first asserted in the bankruptcy court and by the plaintiffs, for example, in the Sala case, there was a motion to amend the complaint, to join us as a plaintiff. We involved the carriers. I mean, we talked  from the parent's perspective. This was a serious problem. This was a serious problem, a portion of which was insured, product liability claims, a portion of which wasn't insured, and we were a good insured. We worked with our carriers, and as the record shows, with the exception of CNA and Wasser, who's no longer part of this case, we worked things out as best we could with the money that was available. If CNA had done what it was obliged to do under its contract of insurance, the whole thing would have worked out through the challenge injunction, but it didn't do it. It just, not only we, I mean, not only the first aid insured, but travelers, which was the first layer of excess, went to CNA and said, please, take the same dollars, the same dollars, not extra dollars, the same dollars you're going to spend to benefit some of your insurers, some of your insurers, the vendor and door seats, take those same dollars and contribute them to this channeling injunction fund so you will get all of your insurers off the hook. Please do that. They said no. And that's why at the end of the day we're out $50-plus million. What is your response to the arguments both of your opponent and the district court as to why consequential damages are not available? And as you answer that, if you could tell me whether you agree or disagree that the court actually specifically ruled on your breach of contract claim. Your Honor, with great respect to the district court, the district court just didn't get it. This is about why. Well, didn't rule on it or didn't? Didn't rule on it, didn't understand the issue. Just plain, if you look at the original decision, which is on Wausau's motion for summary judgment, and it's, I can tell you the date, we filed a supplemental excerpt of records just so you all could have all the decisions together, and it was the order of July 6, 2006. It's tab 6 in our supplemental. I think it's tab 6. Let me check. Yeah. We didn't ask for, we didn't get alter ego insurance. We didn't get a policy that says that for some reason they're going to pierce the corporate, pierce the corporate deal and we want insurance. We didn't buy that. We bought product liability insurance, among other things. But this case is about product liability insurance. What the district judge didn't seem to understand was this case is about product liability claims and insurance for product liability claims. And she said, well, you know, the theory, the theory is that you're a parent and there's a legal theory that makes you responsible for the liabilities of your subsidiary. And no, that's not a product liability analysis. True. But we bought product liability insurance on the chance that someday somebody might, and this is a problem for every corporation in America, someday some court might say you haven't dotted all the I's, crossed all the T's, because you, the parent, are liable for the obligations of your subsidiary. Some of, as I've said a moment ago, some of those obligations you buy insurance for, typically product liability is a classic example with various layers of insurance. And some you don't. The light bill is a classic example of one you don't buy insurance for. So I don't think the district judge actually understood the issue, much less ruled on it. And I say that, again, with all due respect to the district court. The district court said a couple of things about why you were not entitled to consequential damages, one of which was that the payments were voluntary, at least in the Pierce action. And then, excuse me, and opposing counsel has talked about the statute of limitations. I wonder if you'd address those issues. Sure, I'd be happy to. The answer to the statute of limitations is in our supplemental extra record tab 4, on the second page where the judge denied the motion for, CNA's motion for summary judgment. And she also denied it, and that is an order dated September 27, 2006. And there is also an order dated August 21, 2006, which is at tab 5. And the answer, and the reason why the district court correctly denied CNA's motion for summary judgment on the period of limitations was that we had, we, actually I, had written to CNA, and we were engaged in settlement negotiations with respect to this. So CNA did not raise this issue in its opening brief. The district judge appropriately denied their motion for summary judgment, finding there was a material issue of fact with respect to whether or not we were involved in settlement negotiations. And more importantly, the claim for breach of implied covenant of good faith and fair dealing, which is a contractual claim, is not time-barred regardless of when you think the statute starts running. So the argument with respect to the period of limitations, Your Honors, I respectfully submit is without merit whatsoever, no matter which way you look at it. And I'm sorry, Your Honor, I forgot your second question. The district court relied on the fact that the payments, at least in the Pierce action, were voluntary in nature. Yes. Thank you. Thank you for reminding me. They were hardly voluntary. We tendered the Pierce defense to both Wausau and CNA. Wausau responded. CNA did not. We were in a lawsuit in Superior Court in San Diego. We hired lawyers. We were entitled to what's referred to in California as Puma's counsel, because there's obviously by this time of our relationship with CNA a dispute with respect to coverage. I mean, that's not subject to any dispute whatsoever. And we defended ourselves and we got the case that we needed lawyers to successfully dismiss a class action in Superior Court in San Diego. What was voluntary about that? We certainly couldn't default. We were, although not a public company at the time, we were a private company. Well, I think the argument is that you were required to have the consent of the insurer to do that. We sent them a letter, Your Honor, and they ignored us. We certainly couldn't in good conscience default. We are, we are, I mean, I've represented this company for a long time. We are a respectful corporate citizen. We do not ignore summons and complaints from courts when we get them. We sent them a letter. They ignored us. We appeared. We filed appropriate papers. We engaged appropriate counsel in Superior Court of California, and it's obviously, I believe, good judgment to dismiss the case ultimately. And guess what? The lawyers didn't do it pro bono. So the other, the other voluntary payment, which I'd like to talk about, because Your Honor suggested it was trained, and that's the one, that's the one that really troubles me. CNA paid the distinguished California law firm, among their tolls, fees to research causes of action to sue its first name insured. My client. And then it settled the sale of action on behalf of train rather than contributing to the channeling junction, as we spoke about a moment ago. And then, and didn't get a release. And then train sued us for a whole lot of money. And we ended up settling with train for $600,000, a very small number compared to what they were suing us for. And that was voluntary. And that was a what? That was, quote, voluntary, unquote, Your Honor. That was, that was one of the best settlements I've ever achieved in a case in which a lot of money was being sought. But, you know, this mess that CNA created took us, you know, I was talking to my friend, Ms. Kogan here, about long cases. This case, for me, is about to enter its 12th year. And I'm not a young man anymore, but it all could have been over so much sooner if this insurance company had done that, which it undertook by contract to do. And if you don't have any other questions, I'll sit down. There's a charge made that the damages that came were really because of the bankruptcy of the subsidiary consolidated, and then a charge that some of them were due to your client's fraudulent handling of the subsidiary. No. Is there record substantiation for that? And if so, what's your response? The record is, there's not a sufficient record before this Court today to answer that question with precision because the claim was dismissed by the district court. The answer to the question that is implicit in your Honor's question is, yeah, there's lots of evidence there, it's just not in this record. What we want, what we can prove, it's not in the record because we weren't given the opportunity to provide the evidence. We can prove furnace claims. We can prove how much money was paid in the bankruptcy court. And if you'll forgive me for speaking outside of the record, the vast majority of the money that was paid in the bankruptcy court was for product liability claims that we would not have had to pay if there was a channeling injunction. And that sum is substantially in excess of $50 million, Your Honor. So there's no, because of this summary judgment order, the record is incomplete. But I assure this Court that if you give us the chance to have the trial that I so deeply believe we deserve, there can, will be evidence to the right of the decimal point as to what those damages are. Thank you very much. Thank you. You have a bit of rebuttal time remaining. Yes, Your Honor. Just a couple points of clarity. The $50-plus million that a notice claims it was cheated out of because CNA somehow didn't, breached its contract and didn't do the right thing under the contract is actually comprised of a ruling by the bankruptcy court that a notice fraudulently transferred over $50 million out of its subsidiary consolidated. No claim was ever tendered to CNA, and CNA would have absolutely no obligation to be involved in a bankruptcy matter involving fraudulent transfers. That's simply outside the bounds of the insurance contract, and it's completely a red herring, as is the issue of the channeling injunction. Again, CNA is only responsible to defend, indemnify, or settle claims which were tendered to it by a named insured or an additional insured under the contract. The channeling injunction that a notice so desperately wanted has absolutely nothing to do with CNA's obligations here. Well, you have a duty under California law of good faith and fair dealing, and insurance companies have been living with that for a long time, of making decisions that later were rejected by the court. I think what counsel is arguing is that under your duty and responsibility under California law, you should have tried to settle a case through this channeling issue. Now, I don't know what the standard review is for the decision that you made. Maybe you can help me with that under California law. But what's wrong with the theory that the insurance company did have a covenant of good faith and fair dealing, and that they violated that by failing to aggressively trying to settle this lawsuit on behalf of the insureds? The whole issue, Your Honor, stems from the fact that E-Notice had not tendered its defense in the SALA action to CNA. So there was no obligation for CNA to settle the SALA action on E-Notice's behalf because E-Notice wasn't a defendant. What was tendered to CNA was the defense of Trane, an additional insured vendor, that was sued in the SALA action. And CNA did defend Trane, and in fact paid $7 million, exhausted all of its policies, in the SALA action. E-Notice was trying to settle not just the SALA action, but a host of furnace claims throughout the country that had not been tendered to CNA. And the claims that were tendered to CNA and or WASAW, WASAW had agreed to defend. E-Notice is only entitled to one full defense. So CNA paid out all of its limits, exhausted its policies on duties that it had under the four corners of the insurance contract, paid it to an additional insured vendor, Trane. Thank you, counsel. The case just argued is submitted, and we appreciate your patience. Our final case on this morning's docket is Natural Resources Defense Counsel v. EPA.
judges: Mills, Wallace, Graber